LAW OFFICES
OF
# Diehl, Dluge, Michetti & Michetti

1070 Market Street
Sunbury, PA 17801
PH: (570) 286-7000, (570) 286-9999
FAX: (570) 286-0700

| | |
|---|---|
| Robert L. Dluge, Jr. | Robert E. Diehl, Jr. (Retired, 1961-2021) |
| Joseph C. Michetti, Jr. | John T. Robinson (Retired, 1976-2018) |
| Antonio D. Michetti | Michael Kivko (1931-1987) |

FILED '25 FEB 26 PM 1:05
CLERK US COURT, PAMB

February 25, 2025

Clerk, US Bankruptcy Court
1501 North 6th Street
Harrisburg, PA 17102

RE: Scott W. Dunham, Jr., and Robin L. Dunham, Chapter 13
Case No. 1-24-01534-HWV
**OBJECTION TO AMENDED PLAN**

To Whom It May Concern:

Please be advised that our office serves as legal counsel for Truck and Trailer Sales and Leasing Corp., (hereinafter TTSL) a creditor of Scott Dunham above captioned, and please enter our appearance on their behalf.

TTSL objects to the plan for the following reasons:

1. As of February 2025, the balance owed TTSL per the attached agreement is $208,816.61 and this is not reflected on the Amended Plan; and

2. TTSL was not served with the Notice of Claim, and therefore should have the right to file a claim at this time.

Debtors' counsel, Lisa A. Rynard, is copied herein.

Sincerely,

Antonio D. Michetti, Esquire

ADM/mam
Enclosure(s)

cc: Lisa A. Rynard, Esquire
   Truck & Trailer Sales & Leasing Corp.

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: : CHAPTER 13
SCOTT W. DUNHAM, JR. : CASE NO. 1-24-01534-HWV
ROBIN L. DUNHAM :
          Debtors :

## NOTICE

**NOTICE IS HEREBY GIVEN THAT:**

An **Amended Plan** has been filed by the Debtors. The hearing on the confirmation of the Amended Plan of reorganization is scheduled for:

    United States Bankruptcy Court        Date: **March 5, 2025**
    Sylvia H. Rambo US Courthouse
    Bankruptcy Courtroom                   Time: **9:30 AM**
    1501 North 6th Street
    Harrisburg, PA 17101

Any objection to the Amended Plan must be filed on or before **February 26, 2025**. Anyone wishing to object to the Amended Plan must do so in writing, in accordance with the Federal Rules of Bankruptcy Procedure. Objections must be filed with the Clerk, U.S. Bankruptcy Court, 1501 North 6th Street, Harrisburg, PA 17102 and a copy served on Debtors' counsel, Lisa A. Rynard, Esquire, at the address below. Any objecting party must appear at the hearing.

Please note that evidentiary hearings will not be conducted at the time of the confirmation hearing. If it is determined during the confirmation hearing that an evidentiary hearing is required, the evidentiary hearing will be scheduled for a future date.

A copy of all documents filed in connection with this matter are available for inspection at the Clerk's Office, 1501 North 6th Street, Harrisburg, PA.

                                                Lisa A. Rynard, Esquire
                                                Law Office of Lisa A. Rynard
                                                240 Broad Street
                                                Montoursville, PA 17754
                                                (570) 505-3289
                                                larynard@larynardlaw.com
                                                Counsel for Debtors

Dated: January 21, 2025

LOCAL BANKRUPTCY FORM 3015-1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:  
SCOTT W. DUNHAM JR  
ROBIN L. DUNHAM

CHAPTER 13

CASE NO: 1:24-24-01534-HWV

___ ORIGINAL PLAN (Indicate 1st, 2nd, etc.)  
✓ AMENDED PLAN (Indicate 1st, 2nd, etc.)

_0_ Number of Motions to Avoid Liens  
_0_ Number of Motions to Value Collateral

## CHAPTER 13 PLAN

### NOTICES

Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "not included" or if both boxes are checked or if neither box is checked, the provision will be ineffective if set out later in the plan.

| | | Included | Not Included |
|---|---|---|---|
| 1 | The plan contains nonstandard provisions, set out in § 9, which are not included in the standard plan as approved by the U.S. Bankruptcy Court for the Middle District of Pennsylvania | ✓ Included | Not Included |
| 2 | The plan contains a limit on the amount of a secured claim set out in § 2.E, which may result in a partial payment or no payment at all to the secured creditor | Included | ✓ N/A Not Included |
| 3 | The plan avoids a judicial lien or nonpossessory, nonpurchase-money security interest set out in § 2.H | Included | ✓ Not Included |

### YOUR RIGHTS WILL BE AFFECTED

READ THIS PLAN CAREFULLY. If you oppose any provision of this plan, you must file a timely written objection. This plan may be confirmed and become binding on you without further notice or hearing unless a written objection is filed before the deadline stated on the Notice issued in connection with the filing of the plan.

---

## 1. PLAN FUNDING AND LENGTH OF PLAN.

### A. Plan Payments From Future Income

1. To date, the Debtor paid $35,000.00 (enter $0 if no payments have been made to the Trustee to date). Debtor shall pay to the Trustee for the remaining term of the plan the following payments. If applicable, in addition to monthly plan payments, Debtor shall make conduit payments through the Trustee as set forth below. The total base plan is $469,500.00 plus other payments and property stated in § 1B below:

| Start mm/yyyy | End mm/yyyy | Plan Payment | Estimated Conduit Payment | Total Monthly Payment | Total Payment Over Plan Tier |
|---|---|---|---|---|---|
| 08/2024 | 01/2025 | | | | 35,000.00 |
| 02/2025 | 07/2029 | 7,000.00 | 0.00 | 7,000.00 | 434,500.00 |
| | | | | | |
| | | | | | |
| | | | | Total Payments: | 469,500.00 |

2. If the plan provides for conduit mortgage payments, and the mortgagee notifies the Trustee that a different payment is due, the Trustee shall notify the Debtor and any attorney for the Debtor in writing, to adjust the conduit payments and the plan funding. Debtor must pay all post-petition mortgage payments that come due before the initiation of conduit mortgage payments.

3. Debtor shall ensure that any wage attachments are adjusted when necessary to conform to the terms of the plan.

4. CHECK ONE: ( ) Debtor is under median income. If this line is checked, the rest of § 1.A.4 need not be completed or reproduced.

( ✓ ) Debtor is over median income. Debtor estimates that a minimum of $170,398.43 must be paid to allowed unsecured creditors in order to comply with the Means Test.

---

### B. Additional Plan Funding From Liquidation of Assets/Other

1. The Debtor estimates that the liquidation value of this estate is $[blank] (the liquidation value is calculated as the value of all non-exempt assets after the deduction of valid liens and encumbrances and before the deduction of Trustee fees and priority claims.)

Check and complete the applicable section:

✓ No assets will be liquidated. (Also list the un-liquidated value in § 7.B.3 and § 7.C.3, if applicable.)

___ Certain assets will be liquidated as follows:

2. In addition to the above specified plan payments, Debtor shall deliver to the plan proceeds in excess of $[blank] from the sale of property known and designated as _____. All sales shall be completed by _____. If the property does not sell by the date specified, then the disposition of the property shall be as follows: _____.

3. Other payments from any source(s) (describe source, timing, and amount) to the Trustee as follows: _____.

## 2. SECURED CLAIMS

### A. Pre-Confirmation Distributions (Pick One)

✓ None. If "None" is checked, the rest of § 2.A need not be completed or reproduced.

Adequate protection or conduit payments in the following amounts will be paid by the Debtor to the Trustee. The Trustee will disburse these payments to the creditor of record claim has been filed as soon as practicable after receipt of said payments from the Debtor.

| Name of Creditor | Last Four Digits of Account Number | Estimated Monthly Payment |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

1. The Trustee will not make a partial payment. If the Debtor makes a partial plan payment, or if it is not paid on time, and the Trustee is unable to pay timely a payment due on a claim in this section, the Debtor's cure of this default must include any applicable late charges.

2. For mortgages filed a notice pursuant to Fed. R. Bankr. P. 3002.1(b), the change in the monthly payment to the Trustee will not require modification of this plan.

### D. Maintenance of Payments and Cure of Default, if any, Claims Secured by Debtor's Principal Residence and Other Direct Payments by Debtor. (Pick One)

___ None. If "None" is checked, the rest of § 2.D need not be completed or reproduced.

✓ Payments will be made by the Debtor directly to the creditor according to the original contract terms, and without modification of those terms unless otherwise agreed to by the contracting parties. All liens survive the plan if not avoided or paid in full under the plan.

| Name of Creditor | Description of Collateral | Last Four Digits of Account Number |
|---|---|---|
| Northumberland National Bank | 837 App Road, Selinsgrove, PA | 6156 |
| First National Bank | 2023 Chevrolet Silverado | 0423 |
| See Part 9 cont. | | |

[Page too faded/low-resolution to reliably transcribe. Form contains bankruptcy plan sections including: Arrears, Other secured claims, Surrender of Collateral, Lien Avoidance, Secured claims for which § 506 valuation is applicable, and Priority Claims including Administrative Claims and Attorney's fees. Tables throughout are largely empty except for one entry referencing "Service 1st Federal National Bank" with address in Selinsgrove, PA.]

Case 1:24-bk-01534-HWV   Doc 32   Filed 02/26/25   Entered 02/26/25 13:30:31   Desc
Main Document   Page 4 of 14

| Name of Creditor | Estimated Total Payment |
|---|---|
| | |

**B. Priority Claims (including certain Domestic Support Obligations).**

Allowed unsecured claims entitled to priority under § 1322(a) of the Code will be paid in full unless modified under § 4.

| Name of Creditor | Estimated Total Payment |
|---|---|
| | |
| | |
| | |

**C. Domestic Support Obligations assigned to or owed to a governmental unit under 11 U.S.C. §507(a)(1)(B).** Check one of the following two lines.

☑ None. If "None" is checked, the rest of § 3.C. need not be completed or reproduced.

☐ The allowed priority claims listed below are based on a domestic-support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim. This plan provision requires that payments in § 2 be for a term of 60 months (see 11 U.S.C. § 1322(a)(4)).

| Name of Creditor | Estimated Total Payment |
|---|---|
| | |
| | |

**4. UNSECURED CLAIMS**

**A. Claims of Unsecured Nonpriority Creditors Specially Classified.** Check one of the following two lines.

☐ None. If "None" is checked, the rest of § 4.A. need not be completed or reproduced.

☑ To the extent that funds are available, the allowed amount of the following unsecured claims, such as co-signed unsecured debts, will be paid before other unclassified, unsecured claims. The claim shall be paid interest at the rate stated below. If no rate is stated, the interest rate set forth in the proof of claim shall apply.

| Name of Creditor | Reason for Special Classification | Estimated Amount of Claim | Interest Rate | Estimated Total Payment |
|---|---|---|---|---|
| | | | | |
| | | | | |

**B.** Remaining allowed unsecured claims will receive a pro-rata distribution of funds remaining after payment of other classes.

**5. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** Check one of the following two lines.

☐ None. If "None" is checked, the rest of § 5 need not be completed or reproduced.

☑ The following contracts and leases are assumed (and arrears in the allowed claim to be cured in the plan) or rejected.

| Name of Other Party | Description of Contract or Lease | Monthly Payment | Interest Rate | Estimated Arrears | Total Plan Payment | Assume or Reject |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

---

**6. VESTING OF PROPERTY OF THE ESTATE.**

Property of the estate will vest in the Debtor upon

*Check the applicable line:*

☐ plan confirmation
☐ entry of discharge
☑ closing of case

**7. DISCHARGE** (Check one)

☑ The debtor will seek a discharge pursuant to § 1328(a).
☐ The debtor is not eligible for a discharge because the debtor has previously received a discharge described in § 1328(f).

**8. ORDER OF DISTRIBUTION.**

If a pre-petition creditor files a secured proof of specially classified claim after the bar date, the Trustee will treat the claim as allowed unless objected to by the Debtor.

Payments from the plan will be made by the Trustee in the following order:

Level 1. _____
Level 2. _____
Level 3. _____
Level 4. _____
Level 5. _____
Level 6. _____
Level 7. _____
Level 8. _____

If the above Levels 1-8 are filled in, then order of distribution of plan payments will be in the order listed or referenced. If the above Levels are not filled in, then the order of distribution of plan payments will be determined by the Trustee using the following as a guide:

Level 1. Adequate protection payments
Level 2. Debtor's attorney's fees
Level 3. Domestic Support Obligations
Level 4. Priority claims, pro rata
Level 5. Secured claims, pro rata
Level 6. Specially classified unsecured claims
Level 7. Timely filed general unsecured claims
Level 8. Untimely filed general unsecured claims to which the Debtor has not objected

**9. NONSTANDARD PLAN PROVISIONS.**

Include the additional provisions below or on an attachment. Any nonstandard provision placed elsewhere in the plan is void. (NOTE: The plan and any attachment must be filed as one document, not as a plan and exhibit.)

[nonstandard provisions text – illegible]

Date: 01/15/2025      /s/ Lisa A. Rynard
                     Attorney for Debtor

                     /s/ Scott W. Dunham, Jr.
                     Debtor

                     /s/ Robin L. Dunham
                     Joint Debtor

By filing this document, the Debtor, if not represented by an attorney, or the Attorney for Debtor also certifies that this document contains no nonstandard provisions other than those set out in § 9.

# ASSET PURCHASE AGREEMENT

This Agreement is made on this 22nd day of June, 2023, by and between **TRUCK & TRAILER SALES & LEASING CORP.**, a Pennsylvania business corporation with a principal place of business at 1273 S. Market Street, Selinsgrove, Pennsylvania 17870 (Seller) and **C & R DUNHAM TRUCKING LLC**, a Pennsylvania limited liability company with a principal place of business at 837 App Road, Selinsgrove, Pennsylvania 17870 (Buyer).

WHEREAS, Seller operates a trucking sales, leasing and servicing business, which includes a transportation department that owns and operates various trucks (Transportation Department); and

WHEREAS, Buyer desires to purchase from Seller certain assets of Seller's Transportation Department.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and intending to be legally bound hereby, the parties agree as follows:

1. **SALE AND PURCHASE OF ASSETS.**

Subject to the terms and conditions herein, Sellers shall sell, and Buyers shall purchase, the following assets (Assets), together with Seller's Transportation Department, and assist in the transition of key employees as a going concern:

A. Seller's vehicles and equipment as shown on Exhibit A;

B. Key employees being offered to transfer employment to Buyer from Seller's Transportation Department, namely A. Kline; G. Adams; G. Weller; and K. Snyder;

C. Goodwill.

## 2. PURCHASE PRICE AND ALLOCATION.

The purchase price is $475,000.00. Buyer shall deposit with seller a good faith deposit in the amount of $5,000.00 at the time of execution of this agreement which shall be applied to the purchase price. At closing, Buyer shall pay $240,000.00 of the purchase price by bank or certified check payable to the Seller with the balance to be financed by the Seller. The balance of the monetary obligation of $235,000.00 owed by Buyer to Seller shall be secured by a personal guarantee signed by Scott Dunham, a corporate guarantee to be signed by Scott Dunham as Managing Member of C & R Dunham Trucking, LLC, a Pennsylvania limited liability company, and Uniform Commercial Code (UCC) Financing Statements filed against all assets named on "Exhibit A". Buyer shall repay the balance financed by the Seller over a term of ten (10) years at an interest rate of four percent (4%), having a monthly payment of $2,379.26, and subject to a five (5) year balloon in the amount of $131,570.31. The purchase price shall be allocated as follows:

| | |
|---|---|
| A. Vehicles and Equipment (Exhibit A): | $240,000.00 |
| B. Assistance in Transferring Retained Employees/Goodwill | $235,000.00 |
| | $475,000.00 |

## 3. LIABILITIES

Buyer shall not assume any present or future debts, liabilities, or obligations of Seller, and Seller shall not assume and current or future debts' liabilities or obligations of Buyer.

## 4. ACCOUNTS RECEIVABLE AND PAYABLE.

A. Seller shall have the right to collect any outstanding Accounts Receivable due to Seller as the result of work the Transportation Department performed prior to the date of closing.

B. All accounts payable relating to said Transportation Department shall be settled at a zero balance prior to or on the date of closing.

## 5. DATE OF CLOSING AND DEPOSIT.

The closing of this transaction shall occur on or before July 31, 2023, at the office of Antonio Michetti, Esq. or such other place as may be mutually agreed upon by the parties. In the event of Buyer's default, Seller's may retain the sum paid on account as liquidated damages or on account of the purchase price, as the Seller's may elect. The retention of the deposit is optional, and not mandatory, and the above remedies are in addition to any other remedies provided at law or in equity.

## 6. WARRANTIES OF SELLERS.

Seller represents and warrants to Buyer, as of the date of this Agreement and the time of closing, as follows:

A. Seller is the sole and unconditional owner of the Transportation Department and the Assets thereof;

B. Seller has the authority and the power to enter into this Agreement and to sell the Assets;

C. The execution of this Agreement and the sale of the Assets shall not constitute a violation of any contract to which Seller is a party;

D. All bills of sale, instruments of transfer, assignments and other instruments delivered by Seller to Buyer in connection with this transaction shall be sufficient to vest in Buyer good and marketable title to the Assets of the Transportation

Department, free and clear of any and all liens, encumbrances, charges or other claims of any kind;

E. There are no lawsuits pending presently against the Transportation Department and there are presently no threatened claims, proceedings or lawsuits of any kind against Transportation Department;

F. Seller has timely filed true and correct federal, state and local tax returns and paid all taxes, fees and amounts due any person or governmental agency;

G. Seller shall defend, indemnify and hold Buyer harmless from any claims or demands of creditors of Seller, including taxing authorities;

H. Seller has complied with all applicable federal, state and local laws, rules and regulations;

I. Between the date of this Agreement and the date of closing, Seller will continue to operate the Transportation Department in the usual and ordinary course;

J. No notice by any governmental or other public authority has been served upon Seller;

K. Buyer has had the opportunity to inspect the trucks which are subject to this sale, and agrees to accept them "as is".

## 7. WARRANTIES OF BUYERS.

Buyer represents and warrants to Seller, as of the date of this Agreement and the time of closing, as follows:

A. Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania, and has the

corporate power and authority to own and use its properties to transact the business in which it is engaged, and to enter into this Agreement and to consummate the transaction contemplated hereby;

B. Buyer is not aware of any facts which prohibit Buyer from closing this Agreement in accordance with the terms thereof;

C. The execution of this Agreement and the consummation of the transaction contemplated hereby by the Buyer will not result in any breach of the terms or conditions of, or constitute a default under any instrument or obligation to or by which Buyer may be bound or effected, or violate any order, writ, injunction or decree of court in any litigation to which Buyer is a party, or violate any law;

D. Neither the execution nor the delivery of this Agreement by Buyer, nor the purchase by Buyer of the Assets pursuant to this Agreement, will contravene any provision of the Certificate or Organization or Operating Agreement of the Buyer.

## 8. SURVIVAL OF WARRANTIES.

All representations, warranties and agreements set forth in this Agreement shall survive the closing and the transfer of Assets.

## 9. CONDITION OF TANGIBLE ASSETS.

Seller represents that the tangible assets being sold under this Agreement are in good condition and repair, reasonable wear and tear excepted.

## 10. RISK OF LOSS.

Seller assumes all risk of loss, damage or destruction to the assets subject to this Agreement until the date of closing. In the event of a loss that severely damages the Assets or

substantially impairs the value of the Transportation Department, Buyer shall have the option to terminate this Agreement upon written notice to Seller.

## 11. BROKERAGE AND OTHER EXPENSES.

Seller and Buyer represent to each other that neither of them has been represented by any broker entitled to any fee or commission in connection with this Agreement. The parties hereto shall each pay their own expenses incidental to the preparation of this Agreement and the consummation of the transactions contemplated hereby.

## 12. ITEMS TO BE DELIVERED AT CLOSING.

A. At the closing, Seller shall deliver to Buyer and Buyer shall take possession of the following:

    (i)    The Assets:

    (ii)    A Bill of Sale for the Assets:

    (iii)    Titles, endorsed for transfer, to the vehicles referred to in Exhibit A;

    (iv)    Executed counterparts of all Agreements executed by Buyer which require Seller's agreement and execution.

B. Buyers shall deliver to Sellers, and Sellers shall take possession of the following:

    (i)    Payment of all sums due pursuant to this Agreement:

    (ii)    Certified copies of Resolution of the Member(s) of Buyers authorizing the execution of this Agreement and all documents required for closing;

    (iii)    Executed counterparts of all Agreements executed by Seller which require Buyer"s agreement and execution.

## 13. INDEMNIFICATION.

A. Seller shall indemnify, defend and hold Buyer harmless from and against any and all claims, demands, actions, liabilities, costs, expenses, losses and damages, (including attorney's fees), which may arise or result from: (1) the conduct of the Business prior to the date of closing; (2) any misrepresentation, breach of warranty or breach or default in performance by Seller of any covenant, promise or agreement contained in this Agreement.

B. Buyer shall indemnify, defend and hold Seller harmless from and against any and all claims, demands, actions, liabilities, costs, expenses, losses and damages, (including attorney's fees), which may arise or result from: (1) the conduct of the Business on or after the date of closing; (2) any misrepresentation, breach of warranty or breach or default in performance by Buyer of any covenant, promise or agreement contained in this Agreement.

## 14. NOTICE.

Whenever notice is given pursuant to this Agreement or otherwise, it shall be in writing, delivered in person or sent by registered or certified mail, postage prepaid, to the address of each of the parties as set forth above, or at any other address furnished in writing by one party to the others.

## 15. NO ASSIGNMENT.

No right or interest arising under this Agreement shall be assigned by Seller or Buyer without the written consent of the other.

## 16. AMENDMENT.

This Agreement may not be amended, modified or altered except by a written instrument executed by all parties hereto.

## 17. PARTIES IN INTEREST.

This Agreement shall be binding on and inure to the benefit of, and be enforceable by, the parties hereto, their heirs, personal representatives, successors and assigns.

## 18. GOVERNING LAW.

This Agreement shall be interpreted and construed in accordance with and governed by the laws of the Commonwealth of Pennsylvania.

## 19. ENTIRE AGREEMENT.

This Agreement is the entire agreement between the parties hereto and no previous or contemporaneous oral, written or otherwise indicated agreements shall be of any force or effect. This Agreement correctly sets forth the obligations of Seller and Buyer to each other as of its date.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

**SIGNATURES TO FOLLOW**

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

ATTEST:

_____

WITNESS:

_____

SELLER:
Truck & Trailer Sales & Leasing Corp.

By: _____
President

BUYER:
C & R Dunham Trucking LLC

By: _____
Scott Dunham, Managing Member